IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE BOONE, #357-769, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. DKC-15-302 |
| RICHARD MILLER, *Warden* and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

***

# MEMORANDUM OPINION

Self-represented Petitioner Wayne Boone filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 2, 2015. ECF No. 1. The Petition challenges Boone's 2001 conviction in the Circuit Court for Baltimore City, Maryland for three counts of attempted first degree murder. *Id.*; ECF No. 3-1, p. 1. Respondents filed a limited answer in which they sought dismissal of the Petition as being time-barred under 28 U.S.C. § 2244(d)(1)-(2). ECF No. 3. Subsequently, Boone filed a reply, arguing that his claim is not time-barred because he has presented a colorable claim of actual innocence and that the one-year period runs from the date on which the facts supporting the claim could have been discovered through the exercise of due diligence. ECF No. 5. Pursuant to an Order of this court, Respondents filed a supplemental answer addressing the merits of Petitioner's claims. ECF No. 10. Thereafter, Boone filed another reply. ECF No. 16. For the reasons that follow, Boone's Petition is denied and will be dismissed, and a certificate of appealability will not issue. The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

# BACKGROUND

On November 5, 2001, Boone entered an *Alford*[1] plea in the Circuit Court for Baltimore City to three counts of attempted first-degree murder. ECF No. 1, p.1; ECF No. 3-1, pp. 1, 5, 9. Once it was determined that the plea was acceptable and that Boone was entering the plea knowingly and voluntarily, the State offered the following facts supporting the plea:

> [A]t approximately 11:40 p.m. on August 4th of 2000, Mr. Alan Michael, Jr. was sitting outside of 2708 Hollins Ferry Road in Baltimore City, State of Maryland. He was currently residing there in the basement. The house, 2708 Hollins Ferry, belonging to his aunt and uncle, Mark and Kathy Bryant.
>
> While waiting outside for a friend, Alan Michael was approached by the Defendant, Terrance Boone.[2] The Defendant asked for a cigarette. Mr. Michael--and asked Mr. Michael if he had ever been robbed. Mr. Michael stated no. The Defendant had his arm inside his shirt implying he had a gun and stated "You are being robbed."
>
> The Defendant ordered Mr. Michael to walk towards the back of the house towards a small field. Mr. Michael gave the Defendant approximately $47.00 U.S. currency. The Defendant ordered Mr. Michael to walk ahead of him, directed him through a couple of alleys to the Hollinswood Inn located at 2039 Annapolis Road. There, the Defendant instructed Mr. Michael to dial a phone number. Mr. Michael did that, handed the phone to the Defendant. At the end of the call, the Defendant ordered Mr. Michael to walk, directed him back in the same direction towards 2708 Hollins Ferry Road.
>
> The Defendant then ordered Mr. Michael to take him into the house at 2708 Hollins Ferry. They entered the dwelling through the basement door, then upstairs to the first floor. There, the Defendant who was thought to be armed with a gun, ordered Mr. Michael to give him two knives off the counter in the kitchen. Mr. Michael was then ordered to tie up his uncle, Mark Bryant. The Defendant ordered Mrs. Bryant to lie on the floor.

---

[1] Under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." As described in *Ward v. State*, 575 A.2d 771, 772 (Md. App. 1990), "an *Alford* plea [is] a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment."

[2] The Petitioner is also known by this name.

The Defendant then took a set of car keys and a wallet with approximately $60.00 U.S. currency that belonged to Mr. Mark Bryant. He then ordered Mr. Michael to lie on the floor. Once Mr. Michael was on the floor, the Defendant used a knife to cut his throat. The Defendant then used a knife to cut Mr. Mark Bryant's throat.

As Mrs. Bryant was on the floor, he ordered her to get up and told her her husband was dead and if she did not believe him, to call his name. Mrs. Bryant called for her husband, got no response. The Defendant then took Mrs. Bryant into the living room where Mr. Michael was laying in a pool of blood. The Defendant stated, "He's dead, too. If you don't cooperate, I'll kill you, too." The Defendant had her kneel on her hands and knees, removed her underwear. The Defendant began to touch her breast. He then stabbed her three times in the back. At this point, Mr. Mark Bryant jumped up and lunged towards the Defendant yelling. The Defendant then fled from the house with Mr. Bryant trying to chase him.

During the course of the investigation, Detective Adams . . . got an anonymous tip that the person responsible for the cutting of these three victims was Terrance and lived on Southdene Avenue. The detective was familiar with the Defendant, Terrance Boone, who at the time was residing at 2573 Southdene Avenue. The detective then put together a photograph array and on August 7th of 2000 showed that to Alan Michael, Jr. He was unable to identify anyone from the photographic array.

On August 8th, Detective Adams accompanied Mr. Michael to the police headquarters where he did a computer composite picture of the suspect. Detective Adams, once seeing the composite, showed the same photographic array to Mr. Michael again and asked him to cover up the top portion of, of any of the suspects in the array's head to see if he could identify anyone and at that time, Mr. Alan Michael, Jr. identified the Defendant, Terrance Boone, seated to my left with his defense counsel here at the trial table as the person that he believed had cut their throats on August 4th and into the early morning hours of August 5th of 2000.

Subsequent to that, as part of the investigation, on August 15th of 2000, the police department interviewed one Benny Twait (phonetic) who indicated that she had had a conversation with the same Defendant, Terrance Boone, here at the trial table, about this incident and that that conversation took place on August 8th of 2000 and that Mr. Boone relayed the facts to her as to what happened on that date and time, that he had approached Alan Michael, Jr., forced him into the house, had cut all, all three person's throats, and gave a rather detailed description to her.

After that, Ms. Twait (phonetic), having been arrested on suspicion of prostitution charges, relayed this information to the police and gave a taped statement to that effect and is available here for trial today.

3

> The Defendant has been identified for the record. All these events did occur in the City of Baltimore. All the victims were taken to Shock Trauma to be treated for their injuries and all are doing rather well now as a result of these injuries. Those are the facts in support of the plea.

ECF No. 1-2, pp. 39-44. No DNA evidence tied him to the scene of the crime. *See* ECF No. 10-3, p. 5.

Thereafter, the circuit court found Boone guilty of all three counts of attempted first degree murder. ECF No. 1-2, p. 45. He was sentenced to serve 50 years in prison, with all but eight years suspended, followed by five years of probation. *Id.* Boone did not file for leave to appeal the entry of his guilty plea and sentence. ECF No. 1, pp. 2-3.

Boone served the executed portion of his sentence and was released to probation. *See* ECF Nos. 1-3 & 3-1. He was thereafter convicted of a separate crime in this court, which violated his probation in the underlying Maryland case. *See* ECF No. 1, p. 12; ECF No. 1-2, p. 3. As a result, on July 10, 2009, Boone was sentenced in state court to serve the remaining 42 years in prison.[3] ECF No. 3-1, p. 2.

On June 18, 2010, Boone filed a petition for post-conviction relief, which he later supplemented, alleging that:

1. His *Alford* plea was induced by trial counsel's coercion and was not made knowingly, voluntarily, or intelligently;

2. He was denied of his Sixth Amendment constitutional right to effective assistance of counsel because counsel: (a) lacked diligence and failed to advocate for Boone; (b) was incompetent in failing to maintain communication; (c) failed to argue against the State's withholding of witnesses and statements; (d) failed to argue for suppression of a questionable photo identification; (e) failed to file a petition seeking leave to appeal, as well as a motion for modification of sentence, as requested

---

[3] In the federal case, *United States of America v. Terrence Boone*, CCB-08-0026, Boone was sentenced to "a total term of 540 months," to "run concurrent with" the sentence imposed by the state court. *See* ECF No. 1, p. 12; *U.S. v. Boone*, CCB-08-0026, ECF No. 41, p. 2.

4

by Boone; and (f) failed to advise Boone of exculpatory DNA evidence and his possible defenses;

3. There was prosecutorial misconduct through overzealous prosecution of Boone despite exculpatory evidence; and

4. The evidence was insufficient.

ECF Nos. 3-1, p. 4; 10-1; 10-2. The circuit court denied Boone's petition on January 31, 2014. ECF No. 1-3.

Thereafter, Boone filed an application for leave to appeal the denial of post-conviction relief to the Court of Special Appeals of Maryland, arguing that:

1. The post-conviction court erred in deciding the exculpatory DNA issue by failing to address Boone's claims and by evaluating it under the standard for ineffective assistance of counsel rather than for a *Brady*[4] violation;

2. The post-conviction court failed to address Boone's claims that trial counsel failed to discuss any defenses available to him, as well failed to advise him of the negative DNA and fingerprint results until he had already accepted the *Alford* plea; and

3. The post-conviction court misrepresented the facts of the case.

ECF No. 1-4. The Court of Special Appeals summarily denied Boone's application in an unreported opinion filed on July 18, 2014, with the mandate issuing on August 18, 2014. ECF No. 3-2.

## CLAIMS FOR RELIEF

By his Petition for writ of habeas corpus filed in this court, Boone claims that he is being detained in state custody illegally.[5] First, Boone alleges that trial counsel rendered ineffective

---

[4] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[5] According to the Department of Public Safety & Correctional Services, Boone is presently confined at Western Correctional Institution, where the current warden is Richard Graham, Jr. Therefore, the Clerk will be directed to amend the docket with Boone's current address and to name the proper Respondent.

assistance for: (a) failing to advise him of exculpatory DNA evidence, and (b) failing to advise him of the nature and elements of the charge against him. ECF No. 1, pp. 5, 7. Second, Boone advances an actual innocence claim, arguing that "DNA places another at the scene when the crime took place." *Id.* at pp. 8-9.[6]

## TIMELINESS

Preliminarily, Respondents contend that Boone's Petition was not timely filed. ECF No. 3. Respondents assert that Boone's judgment of conviction became final for direct appeal purposes on December 5, 2001, and thus, he had until December 5, 2002, to file a timely federal habeas corpus petition. *Id.* at p. 4. According to Respondents, because Boone did not file his Petition within that time frame, and because there were no properly filed state post-conviction or other collateral proceedings related to Boone's case pending in state court that would have tolled the limitations period, Boone's current Petition is time-barred under 28 U.S.C. § 2244(d). *Id.*

In replying to Respondents' assertion, Boone states that there is newly-discovered evidence that establishes his innocence in the form of a bloody handprint recovered from the crime scene, which detectives believed belonged to the person responsible for the crime and which did not match Boone's handprint. ECF No. 5, p. 3. Boone contends that the State withheld this evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and avers that he only became aware of its existence in 2010, while his petition for post-conviction relief was pending. ECF No. 16, p. 2.

---

*See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (stating that "in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held").

[6] Through a supplemental petition, Boone also claims that the State suppressed exculpatory evidence in violation of *Brady*. ECF No. 6. In his second reply, however, Boone acknowledged that he "did not raise this claim in the habeas Petition, and did not receive permission from the court to amend the Petition" and, therefore, "the *Brady* claim is not properly before this court." ECF No. 16, p. 12. The State argues that, in addition, any *Brady* claim would be unexhausted. ECF No. 10, p. 21-22.

A one-year statute of limitations applies to habeas petitions in non-capital cases for persons convicted in state court. *See* 28 U.S.C. § 2244(d)(1); *Wall v. Kholi*, 562 U.S. 545, 550 (2011). Section 2244(d)(1) provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Pursuant to § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." The limitation period may also be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Harris v. Hutchinson*, 209 F.3d 325, 329-30 (4th Cir. 2000). As recognized by the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.8 (2005), the general limitation applies to the application as a whole, but certain subsections require a "claim-by-claim consideration." Subsection (D) is one of those.

Here, the date on which the factual predicate of the claims relying on Petitioner's discovery of the purportedly exculpatory DNA could have been discovered through the exercise of due diligence was in 2010, while Boone's petition for post-conviction relief was pending. Thus, the statute of limitations for filing a petition in this court raising those claims did not begin to run until after the judgment of the post-conviction court became final, on August 18, 2014, when the Court of Special Appeals's mandate denying Boone's application for leave to appeal the denial of post-conviction relief issued. *See* 28 U.S.C. § 2244(d)(1)-(2). Boone filed the instant Petition on February 2, 2015, within the one-year limitations period. As such, Boone's Petition is not time-barred as to those claims, and the court shall proceed to address the merits of them. On the other hand, the second aspect of his ineffective representation claim, namely that counsel failed to advise him of the nature and elements of the charge against him, does not depend on any newly discovered evidence and is time barred, unless Petitioner can overcome that bar based on actual innocence.

## DISCUSSION

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). In order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Act further provides that:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (emphasis and citation omitted).

I.   **Ineffective Assistance**

Boone claims that his trial counsel rendered ineffective assistance by failing to advise him of the existence of "exculpatory DNA evidence." ECF No. 1, pp. 5, 7. When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

9

Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688. To satisfy this first prong, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (citations omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

With regard to Boone's claim that trial counsel failed to inform him of exculpatory DNA evidence, the post-conviction court denied relief, stating:

> Petitioner argues that Defense Counsel failed to litigate serious issues with the State's case. First, Petitioner claims exculpatory DNA and physical evidence in the form of a bloody handprint that was found at the scene of the crime and does not belong to either the Petitioner or the victims that was withheld from him by the State. Petitioner further claims that had he known of this bloody handprint he would not have taken an *Alford* plea. The State, in its Response, does not deny that evidence of the bloody hand print was not provided to the Petitioner, but instead claims that since there was no DNA linking Mr. Boone to the crime scene, DNA evidence was not a major component of the State's case. Thus, the State argues, the fact that the bloody handprint was present would not have changed the outcome of the case. The State also notes that Defense Counsel was aware of the lack of DNA evidence as this was indicated by Defense Counsel when he stated this in a conference with the State's Attorneys Mabrey and Rosenberg, and Judge Schwait. T. 11/5/01: 10.
>
> Even if it is true that the bloody handprint was relevant and deliberately withheld, the fact that the State withheld evidence from the Petitioner's Trial Counsel does not prove that Trial Counsel's Representation "fell below an objective standard of reasonableness." *Harris* [v. State, 496 A.2d 1074 (Md. 1985)]. Petitioner pleads no facts to indicate that Trial counsel should have known about the bloody handprint or was deficient in any way in not pursuing this evidence. Petitioner must plead facts that ties together the State's failure to turn over evidence with some action on the part of Trial Counsel that was objectively unreasonable. Petitioner's claim must fail because there is nothing on the record to indicate Trial Counsel had any reason to litigate the issue of a bloody hand print if he was not aware of it.

ECF No. 1-3, pp. 13-14.

Boone has not shown how the adjudication of his post-conviction claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; nor has he shown how it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented during the post-conviction hearing.

As to the palm print, Boone argues before this court that defense counsel could have discovered the evidence "by viewing the docket entries and seeing that a warrant was issued for [his] DNA." ECF No. 16, p. 7. However, nowhere in his petition for post-conviction relief, amended petition, and supplemental petition did he allege this information. At most, Boone asserted that a bloody palm print existed and that "trial counsel failed to discuss" it with him. As the post-conviction court correctly noted, Boone did not contend that trial counsel was aware of the palm print's existence. *See* ECF Nos. 10-1, 10-2; *see also* ECF No. 1-3, p. 14. During the post-conviction hearing, Boone acknowledged only that "the State had a duty to further investigate the case," in support of his prosecutorial misconduct claim. ECF No. 10-4, p. 22.

Based upon this record, the post-conviction court's ruling survives scrutiny under 28 U.S.C. § 2254(d). As previously stated, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Here, the post-conviction court noted that trial counsel's performance was not deficient, and Boone has failed to satisfy the standard set forth in *Strickland*. Having reviewed the record in light of the deferential standard of review applicable to 28 U.S.C. § 2254 proceedings, the court concludes that the state post-conviction court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts.

## II. Actual Innocence

Boone also advances a claim of actual innocence. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup v. Delo,* 513 U.S. 298, 326 (1995), or to overcome the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a

freestanding claim of actual innocence, *Id.* at 392. Regardless, Boone has failed to meet the "extraordinarily high" standard required for relief, either as a basis to overcome the limitations bar for part of his ineffective representation claim or as a standalone claim. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993).

The United States Court of Appeals for the Fourth Circuit has stated:

> Claims of actual innocence, whether presented as freestanding ones, or merely as gateways to excuse a procedural default, should not be granted casually. The Supreme Court recently emphasized "the narrow scope" of this type of claim. The claim "must be based on reliable evidence not presented at trial." A reviewing court must evaluate the new evidence alongside any other admissible evidence of the defendant's guilt, and may grant relief only where "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Wilson v. Greene*, 155 F.3d 396, 404-05 (4th Cir. 1998) (internal citations omitted). Because Boone entered an *Alford* plea, "to show 'actual innocence,' he must show that he was factually innocent" of the charges against him. *Lyons v. Lee*, 316 F.3d 528, 533 n.5 (4th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 624 (1998) ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.")).

To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. *Schlup*, 513 U.S. at 324. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 315-17. New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson*, 155 F.3d at 404-05. The

new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999).

Here, Boone has not presented any new evidence that demonstrates his innocence. He states that in 2010, he learned that exculpatory DNA evidence existed "in the form of a bloody handprint that was found at the scene of the crime and does not belong to either the Petitioner or the victims." ECF Nos. 1-4, p. 5; 16, p. 2. He further states that:

> The main piece of evidence that sheds light on the DNA evidence, is the affidavit and warrant by Detective Glenn Zinn and Bret Linder to seize Petitioner['s] DNA and palm print . . . . In the affidavit, detectives articulate in detail the DNA testing that excluded the victims. In addition, detectives explain how they reached the conclusion that the bloody palm print belonged to the person responsible for the crime . . . . The evidence did not match the Petitioner['s].

ECF No. 16, p. 2. Boone, however, has not presented a copy of the affidavit and warrant to support his allegations.[7] Even if Boone presented the documents and they did, in fact, indicate that a bloody palm print was found and that the police believed that it did not belong to Boone, the affidavit and warrant would not be sufficient to show that Boone was factually innocent of the charges against him. The information allegedly contained in those documents would not necessarily exclude Boone as a suspect, especially because at the time of trial, no DNA evidence tied him to the scene of the crime anyway. Boone, it must be remembered, pled guilty to the offenses, albeit pursuant to *Alford*. Boone thus fails to demonstrate that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii).

At most, before this court is an assertion that had Boone known about the existence of the bloody handprint, he would not have pleaded guilty and would have insisted on going to trial.

---

[7] He asks that the State be required to supply the documents. ECF No. 5, p. 7-8.

That assertion, however, is insufficient "in the absence of a showing sufficient to satisfy *Schlup*'s actual innocence gateway." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995). It does not amount to "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup,* 513 U.S. at 316. Therefore, Boone has not made the requisite showing to warrant the relief he seeks.

## CONCLUSION

The Petition for habeas corpus relief will be denied and this case dismissed. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court dismisses a habeas petition on procedural grounds, a Certificate of Appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rouse v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484). Because Boone fails to satisfy these standards, the court declines to issue a certificate of appealability. A separate order follows.

March 20, 2018                    /s/
                                                      DEBORAH K. CHASANOW
                                                     United States District Judge